# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| NATIONAL FAMILY PLANNING & REPRODUCTIVE HEALTH ASSOCIATION, et al.<br><br>Plaintiffs,<br><br>v.<br><br>ROBERT F. KENNEDY, JR., et al.<br><br>Defendants. | No. 1:26-cv-1684-JPW<br><br>(Hon. Jennifer P. Wilson)<br><br>**ORAL ARGUMENT REQUESTED** |

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT FOR LACK OF JURISDICTION

BRIAN D. MILLER.
*United States Attorney*

TIMOTHY S. JUDGE
*Deputy Chief Civil Division,*
*Assistant United States Attorney*

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................1

PROCEDURAL HISTORY...........................................................................................3

FACTUAL BACKGROUND .........................................................................................3

    A.   The Title X Program.................................................................................3

    B.   The Fiscal Year 2027 NOFO....................................................................4

    C.   The OASH Priorities Statement ...............................................................5

STATEMENT OF QUESTIONS INVOLVED........................................................6

LEGAL STANDARD....................................................................................................6

ARGUMENT ...............................................................................................................7

    A.   The Lawfulness of "Alignment" Cannot Be Assessed Until the Agency Applies It. ..............................................................................................7

    B.   A Declaration That the Agency Must Follow the Title X Regulations Would Resolve No Live Disagreement. ..............................................................11

    C.   Preparing an Application Is the Ordinary Cost of Competing, Not Cognizable Hardship.............................................................................14

    D.   Deciding Ripeness Now Avoids Requiring a Record of a Decision the Agency Has Not Made. ........................................................................15

CONCLUSION ...........................................................................................................16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbott Labs. v. Gardner*,
   387 U.S. 136 (1967) ............................................................................. 7, 10

*Armstrong World Indus., Inc. v. Adams*,
   961 F.2d 405 (3d Cir. 1992) .............................................................. 7, 10, 12

*Camp v. Pitts*,
   411 U.S. 138 (1973) ................................................................................. 15

*Felmeister v. Office of Attorney Ethics*,
   856 F.2d 529 (3d Cir. 1988) ....................................................................... 13

*Khodara Environmental, Inc. v. Blakey*,
   376 F.3d 187 (3d Cir. 2004) ....................................................................... 13

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
   511 U.S. 375 (1994) .................................................................................. 6

*Marathon Petroleum Corp. v. Secretary of Finance*,
   876 F.3d 481 (3d Cir. 2017) .................................................................. 10, 14

*National Park Hospitality Ass'n v. Department of Interior*,
   538 U.S. 803 (2003) .................................................................................. 8

*NE Hub Partners, L.P. v. CNG Transmission Corp.*,
   239 F.3d 333 (3d Cir. 2001) ....................................................................... 6

*NFPHRA v. Gonzales,*
   468 F3d 826 (D.C. Cir. 2006) ..................................................................... 11

*Ohio Forestry Ass'n v. Sierra Club*
   523 U.S. 726 (1998) ........................................................................ 11, 15, 16

*Peachlum v. City of York*,
   333 F.3d 429 (3d Cir. 2003) ........................................................................ 7

ii

*Philadelphia Federation of Teachers v. Ridge*,
  150 F.3d 319 (3d Cir. 1998)................................................................................ 8

*Pic-A-State Pa, Inc. v. Reno*,
  76 F.3d 1294 (3d Cir. 1996)............................................................................. 13

*Salvation Army v. Department of Community Affairs*,
  919 F.2d 183 (3d Cir. 1990)............................................................................. 13

*Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*,
  549 U.S. 422 (2007)......................................................................................... 16

*Steel Co. v. Citizens for a Better Env't*,
  523 U.S. 83 (1998)...................................................................................... 6, 16

*Step-Saver Data Sys., Inc. v. Wyse Tech.*,
  912 F.2d 643 (3d Cir. 1990)........................................................................ 7, 11

*Suburban Trails, Inc. v. N.J. Transit Corp.*,
  800 F.2d 361 (3d Cir. 1986)............................................................................. 14

*Texas v. United States*,
  523 U.S. 296 (1998)........................................................................................... 7

*Toilet Goods Ass'n v. Gardner*,
  387 U.S. 158 (1967)......................................................................................... 10

*Travelers Ins. Co. v. Obusek*,
  72 F.3d 1148 (3d Cir. 1995)............................................................................. 12

*Wilmac Corp. v. Bowen*,
  811 F.2d 809 (3d Cir. 1987)............................................................................. 14

*Wyatt, V.I., Inc. v. Gov't of the V.I.*,
  385 F.3d 801 (3d Cir. 2004)............................................................................... 7

**Statutes**

42 U.S.C. § 300(a) ............................................................................................... 3

## Regulations

2 C.F.R. § 200.340(a)(4) ............................................................................................ 9

2 CFR 200.204 ........................................................................................................... 4

42 C.F.R. Part 59, Subpart A .................................................................................... 3

42 C.F.R. Part 59, Subpart A §59.1–§59.11 ............................................................. 3

42 C.F.R. § 59.11 ...................................................................................................... 4

42 C.F.R. § 59.7(a)(3) ........................................................................................... 3, 9

## Other Authorities

Pub. L. No. 91-572, § 2(1), 84 Stat. 1504, 1504 (1970) ............................................ 3

**INTRODUCTION**

The answer to every suspected policy disagreement is not a lawsuit. But that is the answer Plaintiffs chose. A federal agency publishes a grant announcement, a prospective applicant reads language it dislikes, and a complaint follows shortly thereafter, paired with a motion for emergency relief.

Sometimes the claim is real and the need for expedited relief is apparent. Not this one. Plaintiffs read a grant announcement, predicted that the agency would administer it unlawfully, and immediately filed an amended complaint and a motion for summary judgment or, in the alternative, preliminary injunction.

The target of this lawsuit is the Fiscal Year 2027 Title X Notice of Funding Opportunity ("NOFO"). Dkt. 35-2. The NOFO invites applications due January 11, 2027, for awards that will not issue until on or about April 1, 2027. Today, no application exists, no score exists, and no award or denial exists. Plaintiffs nonetheless seek a final judgment declaring parts of the announcement unlawful.

No fewer than three times, the NOFO says that its priorities operate only "where consistent with program authority and the scope of the award . . . and when authorized by law," only "to the extent authorized by law and within the scope of the program," and only "where authorized by law and within the scope of the program." NOFO at 7, 10, 41. Twice more, the NOFO commits that all funded activities "must be in compliance with the requirements of the Title X statute,

1

legislative mandates, and regulations." *Id.* at 3, 8. The OASH Priorities similarly state "OASH will implement the above priorities consistent with applicable laws, regulations, court orders, and any required procedures." Dkt. 35-3 at 3. Under the NOFO's own hierarchy and as stated in the priorities themselves, the regulations sit above the priorities, which must yield. Plaintiffs thus seek a judgment ordering the agency to do what the NOFO already says it will do. That is an attack based on a hypothesis that the agency will not do what its published document repeatedly says.

Article III requires a case or controversy. A fear about how a document might someday be administered, asserted in the teeth of the document's own words, is not a ripe dispute. It is conjecture. Parties cannot manufacture lawsuits by disregarding the words printed on the operative document they challenge, and they cannot ripen a prediction by filing a complaint with a summary judgment motion attached. There is no application, no score, no decision, and no record—only a solicitation and a request that the Court referee a competition that has not begun.

Defendants accordingly file this narrow Rule 12(b)(1) motion to dismiss this suit without prejudice as unripe. Though narrow, the motion presents a question of consequence for every grantmaking agency: whether a funding announcement may be adjudicated—and a record demanded—before anyone has applied.

2

## PROCEDURAL HISTORY

Plaintiffs filed a First Amended Complaint on July 13, 2026. Dkt. 35 ("Am. Compl."). It attaches the challenged NOFO as Exhibit A, Dkt. 35-2, the referenced OASH priorities as Exhibit B, Dkt. 35-3 ("OASH Priorities"), and the HHS priorities as Exhibit C, Dkt. 35-4. Two days later, Plaintiffs moved for summary judgment or, alternatively, a preliminary injunction. The Court entered a scheduling order on July 16, 2026 and another scheduling order on July 30, 2026, directing Defendants to file an administrative record by July 31 and setting oral argument for September 11. *See* Dkts. 42 and 44.

## FACTUAL BACKGROUND

### A.    The Title X Program

Congress enacted Title X of the Public Health Service Act in 1970 to make "comprehensive voluntary family planning services readily available to all persons desiring such services." Pub. L. No. 91-572, § 2(1), 84 Stat. 1504, 1504 (1970); *see id.* § 6(c), 84 Stat. at 1506. Funded projects must "offer a broad range of acceptable and effective family planning methods and services." 42 U.S.C. § 300(a). In making grants, the Secretary must "take into account" the number of patients served, local need, and "the relative need of the applicant." *Id.* § 300(b). Regulations at 42 C.F.R. Part 59, Subpart A, supply criteria for choosing among applicants, including "[t]he ability of the applicant to advance health equity." 42 C.F.R. § 59.7(a)(3). The Secretary may "impose additional conditions prior to, at the time of, or during any

3

award, when in the Department's judgment these conditions are necessary to assure or protect advancement of the approved program, the interests of public health, or the proper use of grant funds." 42 C.F.R. § 59.11.

## B.    The Fiscal Year 2027 NOFO

The Title X grant application process begins with a NOFO.  The NOFO sets out the procedural requirements and substantive criteria for applications and describes the process by which the applications are reviewed.  *See* 2 CFR 200.204. The Office of Population Affairs published the FY 2027 NOFO in April 2026 and a revised version on July 9, 2026. Am. Compl. ¶¶ 70–71. It solicits applications for five-year Title X projects. Applications are due January 11, 2027, and awards are anticipated on or about April 1, 2027. NOFO at 1; Am. Compl. ¶¶ 70, 72.[1]

Twice the NOFO states that all funded activities "must be in compliance with the requirements of the Title X statute, legislative mandates, and regulations." NOFO at 3, 8. Three times it subordinates its priorities to that law, requiring alignment only "where consistent with program authority and the scope of the award . . . and when authorized by law," *id.* at 7, only "to the extent authorized by law and within the scope of the program," *id.* at 10, and only "where authorized by law and within the scope of the program," *id.* at 41.

---

[1] Citations to the NOFO use the document's internal pagination, as in the Amended Complaint. *See* Am. Compl. ¶¶ 75, 82, 101.

4

The application instructions follow the same structure. "Successful proposals" must describe, for each service site, "the broad range of acceptable and effective medically approved family planning methods (including natural family planning methods) and services," *id.* at 19–20, and how the applicant "will ensure compliance with the statute, with each provision of the regulation (42 C.F.R. Part 59, Subpart A §59.1–§59.11), and with each legislative mandate," NOFO at 21. The merit review criteria award fifteen points for statutory and regulatory compliance and thirty-five for advancing the agency's program priorities. *Id.* at 39–40.

The award process has several steps; none has begun. First, HHS reviews the application packages for compliance with application requirements (i.e. necessary forms, etc.). *Id.* at 38. Second, an independent merit review panel scores qualified applications. *Id.* Third, federal staff separately review each for programmatic and budgetary compliance, and the Grants Management Officer performs a required risk analysis. *Id.* at 36–37, 39, 42. "No award decision is final until a Notice of Award is issued by the Grants Management Officer." *Id.*

## C.    The OASH Priorities Statement

As with all previous Administrations, the current Administration has established objectives and priorities. To better highlight and centralize these priorities, HHS subcomponents such as OASH issued "Priorities" statements beginning in the Fall of 2025. https://health.gov/priorities; *see also* Dkt. 35-3.

5

Funding announcements across OASH programs going forward incorporate these Priorities. Like the Title X NOFO, the OASH priorities statement, conditions each priority on what applicable law permits: "OASH will implement the above priorities consistent with applicable laws, regulations, court orders, and any required procedures." Dkt. 35-3 at 3.

## STATEMENT OF QUESTIONS INVOLVED

Is Plaintiffs' challenge to a funding announcement ripe, where no funds have been appropriated, no application has been submitted or scored, no award decision exists, and the document conditions every priority on compliance with the statute and regulations? *No.*

## LEGAL STANDARD

Federal courts are courts of limited jurisdiction, and "[i]t is to be presumed that a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). The burden of overcoming that presumption "rests upon the party asserting jurisdiction," *id.*, and it does not shift because Plaintiffs have also moved for judgment on the merits: the threshold requirement is "inflexible and without exception," and there is no doctrine of hypothetical jurisdiction. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998). Ripeness is properly raised under Rule 12(b)(1). *See NE Hub Partners, L.P. v. CNG Transmission Corp.*, 239 F.3d 333, 341 (3d Cir. 2001).

6

"The function of the ripeness doctrine is to determine whether a party has brought an action prematurely . . . and counsels abstention until such time as a dispute is sufficiently concrete." *Peachlum v. City of York*, 333 F.3d 429, 433 (3d Cir. 2003). The Court weighs "the fitness of the issues for judicial decision" against "the hardship to the parties of withholding court consideration." *Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967). A claim is not fit where it "rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998); *accord Wyatt, V.I., Inc. v. Gov't of the V.I.*, 385 F.3d 801, 806 (3d Cir. 2004).

Because Plaintiffs seek declaratory relief, an overlapping inquiry applies: "the adversity of the interest of the parties, the conclusiveness of the judicial judgment and the practical help, or utility, of that judgment." *Step-Saver Data Sys., Inc. v. Wyse Tech.*, 912 F.2d 643, 647 (3d Cir. 1990). A plaintiff fearing a future event must show its probability "is real and substantial, of 'sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *Armstrong World Indus., Inc. v. Adams*, 961 F.2d 405, 412 (3d Cir. 1992) (citation omitted).

## ARGUMENT

**A.    The Lawfulness of "Alignment" Cannot Be Assessed Until the Agency Applies It.**

Each of Plaintiffs' claims turns on the premise that the NOFO's call for alignment with agency priorities conflicts with the Title X regulations. *See* Am.

7

Compl. ¶¶ 149, 154, 158. Whether that is so depends on facts that do not yet exist: what an applicant proposes, how the merit review panel scores it, and whether any funding decision penalizes conduct the regulations require. None of that has happened. Plaintiffs ask the Court to hold that the agency will apply its priorities unlawfully before applying them at all. That defect does not depend on the NOFO's qualifying language; it follows from the absence of any application, score, or award.

The Supreme Court rejected a similar request in *National Park Hospitality Ass'n v. Department of Interior*, 538 U.S. 803 (2003), where a trade association facially challenged a regulation governing its members' future concession contracts. Because the regulation's operation could vary from contract to contract, "further factual development would significantly advance our ability to deal with the legal issues presented," and "judicial resolution of the question presented here should await a concrete dispute about a particular concession contract." *Id.* at 812. The NOFO's priorities operate, if at all, application by application. NOFO at 39–40.

The Third Circuit applied the same rule in *Philadelphia Federation of Teachers v. Ridge*, 150 F.3d 319, 323–24 (3d Cir. 1998), affirming a Rule 12(b)(1) dismissal of an association's facial challenge. Even assuming the challenged provisions would reach the association's members, "a great deal of uncertainty" remained "regarding how the statute will operate against plaintiffs' members," and "[i]t is this uncertainty that renders the claim unfit for judicial review." *Id.*

8

Plaintiffs may answer that the merit review criteria weigh priority alignment at 35 points against 15 for compliance with the statute and regulations, NOFO at 39–40, and that a recipient who fails to "meaningfully align" faces corrective action or termination under 2 C.F.R. § 200.340(a)(4), *id.* at 7. Both are in the document, but neither creates a present controversy. The 35 points are awarded for advancing the priorities as the NOFO defines them—only "to the extent authorized by law and within the scope of the program," *id.* at 10—so the criterion cannot be scored against an applicant for doing what the regulations require without departing from its own terms. Whether a panel will so depart, and whether any deduction would change an award, cannot be known until applications are scored. The termination provision reaches "funded activities" under an award that has not issued.

The pairing Plaintiffs press hardest illustrates the point rather than defeating it. They set the regulation's direction that the Secretary take into account "[t]he ability of the applicant to advance health equity," 42 C.F.R. § 59.7(a)(3), against the priorities document's criticism of "ideologically-laden concepts like health equity." OASH Priorities. But that document does not purport to repeal § 59.7(a)(3), nor could it. The NOFO commits the agency to compliance with "the requirements of the Title X statute, legislative mandates, and regulations." NOFO at 3, 8. Whether the Secretary in fact declines to credit a showing under § 59.7(a)(3), and whether

9

any such deduction proves decisive, can be known only from a scored application—precisely the contingency the ripeness doctrine requires a court to await.

*Toilet Goods Ass'n v. Gardner*, 387 U.S. 158, 164 (1967), decided the same day as *Abbott Laboratories*, is similar: review was unavailable because the regulation's impact could not be assessed until the agency exercised its discretion. Review was available in *Abbott Laboratories* because the rule was self-executing and forced regulated parties to choose between costly compliance and the risk of sanctions. *Abbott Labs.*, 387 U.S. at 152–53. The NOFO forces no such choice.

*Marathon Petroleum Corp. v. Secretary of Finance*, 876 F.3d 481, 494–95 (3d Cir. 2017), drew a controlling line: a challenge to an agency's authority to act at all was ripe, but a challenge to "the scope or means" of what the agency would do was not, resting on "the speculative assumption" that the agency "will ultimately attempt" what it may not do. Plaintiffs do not say the agency cannot issue a Title X funding announcement. Rather, they say particular priorities within it will be applied beyond the statute and regulations. That is the unripe half of *Marathon*. Nor does it matter that the NOFO may be final agency action; finality asks whether the agency completed the decision it made, ripeness whether the dispute is concrete enough to adjudicate. And the facial framing does not cure the defect, because "the presence of 'a purely legal question' is not enough, of itself, to render a case ripe for judicial review, not even as to that issue." *Armstrong*, 961 F.2d at 421 (citation omitted). As

10

stated by the D.C. Circuit, "[l]itigants are not entitled to an adjudication of every question they perceive after reading through the text of legislation [or funding announcements]." *NFPHRA v. Gonzales*, 468 F3d 826, 830 (D.C. Cir. 2006) (citation and ellipsis omitted).

Count Two stands on no different footing. Plaintiffs plead a notice-and-comment claim conditionally: "[t]o the extent" the alignment requirement "constitutes an amendment to or reversal of the Title X regulations." Am. Compl. ¶ 154. Whether that is so thus turns on the same question as Count One—whether priority alignment, as applied, displaces what the regulations require—and inherits that contingency. This is not a case of a completed procedural failure that "can never get riper." *Ohio Forestry Ass'n v. Sierra Club*, 523 U.S. 726, 737 (1998). Until the priorities are applied, no one can know whether anything has been amended at all.

**B.    A Declaration That the Agency Must Follow the Title X Regulations Would Resolve No Live Disagreement.**

Plaintiffs ask the Court to order the agency to do what the NOFO commits on its face to do. NOFO at 3, 7, 8, 10, 41. A declaration that the agency must follow the Title X statute and regulations would not resolve a disagreement between these parties. Defendants do not contend that the priorities may displace the regulations, and the NOFO says they may not. A declaratory judgment must be conclusive of the parties' rights and must furnish "practical help . . . in ending the controversy." *Step-Saver*, 912 F.2d at 647, 650. A declaration here would supply neither.

Lest there be doubt, the priorities document extinguishes it. It qualifies itself more insistently than the NOFO does, conditioning its DEI priority on what is "permitted by law"; its gender-ideology priority on "applicable law, including any applicable court orders," twice in a single paragraph; its Hyde Amendment priority on "applicable law"; its conflict-of-interest priority on what is "permitted by law"; and its parental-rights priority on "[t]he fullest extent of its authority under the law." OASH Priorities. Dkt. 35-3 at 2–3. It closes with a provision that governs all of them: "OASH will implement the above priorities consistent with applicable laws, regulations, court orders, and any required procedures." *Id.* at 2. The limitation is not a stray phrase but the architecture of both documents Plaintiffs challenge. To plead the conflict they allege, Plaintiffs must read it out of the NOFO three times over and out of the priorities document a half dozen times more.

What remains is a prediction that the agency will disregard its written limits and score applicants down for doing what the regulations require. A prediction does not establish adversity. Plaintiffs must show the feared event's probability is "real and substantial." *Armstrong*, 961 F.2d at 412. This one rests on a chain of contingencies: a member must apply; a panel must score it down on the alignment criterion; the deduction must be decisive; and the agency must disregard published limits. *See Travelers Ins. Co. v. Obusek*, 72 F.3d 1148, 1154 (3d Cir. 1995).

12

Courts withhold review in this posture. In *Felmeister v. Office of Attorney Ethics*, 856 F.2d 529, 537 (3d Cir. 1988), for example, attorneys challenged a revised advertising rule without ever submitting an advertisement to the administering body. Because the agency had not passed on any proposal, its position was "not only unclear, it is purely hypothetical." *Id.* The agency here has passed on no application.

Pre-enforcement review turns on a government position the agency would not disclaim. Review was available in *Khodara Environmental, Inc. v. Blakey*, 376 F.3d 187, 198 (3d Cir. 2004), because "the FAA's position on that issue is perfectly clear." In *Pic-A-State Pa, Inc. v. Reno*, 76 F.3d 1294, 1299 (3d Cir. 1996), the Government "ha[d] not expressly disavowed an intent to prosecute"—and the court contrasted *Salvation Army v. Department of Community Affairs*, 919 F.2d 183, 192 (3d Cir. 1990) ("no adversity where state gives 'express assurance that there will be no enforcement'"). This case is *Salvation Army*: the assurance runs to the conduct Plaintiffs fear: the operative documents disclaim—and Defendants do not assert— any authority to score applicants down for complying with the Title X regulations.

Plaintiffs may say that, on this reasoning, any agency could insulate any document by adding a proviso. The answer is that qualifying language is not what makes this challenge unripe. The priorities operate application by application, and no application has been submitted or scored. That is so even if the NOFO said nothing about its own limits. The qualifiers corroborate the defect; they do not create

13

it. Nor does the NOFO merely save the regulations. It requires each applicant to describe how it "will ensure compliance . . . with each provision of the regulation," NOFO at 21, and scores that showing, *id.* at 39–40. And dismissal immunizes nothing. Applicants scored down for doing what regulations require may seek review on a record showing what the agency did—more than Plaintiffs can offer now.

**C.      Preparing an Application Is the Ordinary Cost of Competing, Not Cognizable Hardship.**

Plaintiffs allege that members must begin preparing applications roughly ninety days before the January 11, 2027 deadline. Am. Compl. ¶ 74. That is not the hardship the ripeness doctrine requires. Tailoring an application to announced criteria is the ordinary condition of competing for discretionary funds, and that cost would exist under any NOFO the agency could lawfully issue. The Third Circuit has rejected precisely this theory: "Mere economic uncertainty affecting the plaintiff's planning is not sufficient to support premature review," particularly where "[t]he challenged regulations require nothing of [the plaintiff] directly." *Wilmac Corp. v. Bowen*, 811 F.2d 809, 813 (3d Cir. 1987); *see also Suburban Trails, Inc. v. N.J. Transit Corp.*, 800 F.2d 361, 366 (3d Cir. 1986) (uncertainty over "eventual inclusion in the grant program" insufficient). Even the costs of responding to an agency examination "are usually not sufficient, however substantial, to justify review in a case that would otherwise be unripe." *Marathon Petroleum Corp. v. Sec'y of Fin.*, 876 F.3d 481, 495 (3d Cir. 2017) (citation omitted).

14

The Supreme Court rejected the same theory in *Ohio Forestry*, 523 U.S at 733–34, holding an association's challenge to an agency plan unripe where the plan imposed no immediate obligation and injury depended on later, site-specific decisions. Nor is the answer that later review would come too late. The Court rejected that objection too: the plaintiff would have "ample opportunity later to bring its legal challenge at a time when harm is more imminent and more certain." *Id.* at 734. So too here. If an award rests on an unlawful ground, the APA supplies vacatur and remand on a record of what the agency did.

**D.    Deciding Ripeness Now Avoids Requiring a Record of a Decision the Agency Has Not Made.**

In the ordinary APA case, review proceeds on a record of a decision already made. "[T]he focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." *Camp v. Pitts*, 411 U.S. 138, 142 (1973) (per curiam).

This case inverts that sequence. Defendants will comply with the Court's July 31, 2026 deadline, but the filing can contain only the materials underlying the NOFO's issuance, not a record of the priorities being applied to an applicant, because they have not been applied to anyone. To be clear, the difficulty is not the burden of assembling that record, which Defendants do not contend is substantial here; it is that no record the agency can compile will contain the decision Plaintiffs ask the

15

Court to review. That gap is the fitness inquiry in documentary form. *See Ohio Forestry*, 523 U.S. at 735.[2]

**CONCLUSION**

Plaintiffs read a grant announcement, feared the worst about how it might someday be applied, and sued before anyone applied for anything. The document they attack promises to follow the law they say it will break. The Court should dismiss the First Amended Complaint under Rule 12(b)(1) as unripe, without prejudice to a challenge to any concrete application of the NOFO.

Respectfully submitted,

BRIAN D. MILLER
United States Attorney

s/ *Timothy S. Judge*
TIMOTHY S. JUDGE
Deputy Chief, Civil Division
PA Bar No. 203821
William J. Nealon Federal Building
U.S. Courthouse
235 N. Washington Avenue
Scranton, PA 18503
Tel:  (570) 348-2827
timothy.s.judge@usdoj.gov

Dated: July 31, 2026

---

[2] Defendants assert jurisdiction must be resolved before the merits may be adjudicated, *Steel Co.*, 523 U.S. at 94–95, and a court has "leeway to choose" the threshold ground that disposes of a case, *Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007). Resolving this motion first would spare the parties and the Court merits proceedings on claims the Court may lack jurisdiction to decide. That order of decision also serves the ripeness doctrine's protective purpose: sparing agencies the burdens of litigating—and compiling records of—decisions they have not yet made. *See Abbott Labs.*, 387 U.S. at 148–49; *Ohio Forestry*, 523 U.S. at 735.

16

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| NATIONAL FAMILY PLANNING & REPRODUCTIVE HEALTH ASSOCIATION, et al.<br><br>Plaintiffs,<br><br>v.<br><br>ROBERT F. KENNEDY, JR., et al.<br><br>Defendants. | No. 1:26-cv-1684-JPW<br><br>(Hon. Jennifer P. Wilson) |

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.8

Pursuant to Local Rule 7.8(b)(2), I certify that the foregoing brief complies with the length limits of Local Rule 7.8(b). The brief contains 3,870 words, exclusive of the caption, signature block, and certificates, as counted by the word-processing system used to prepare it, which is fewer than the 5,000 words that Rule permits. The brief is double-spaced and set in 14-point Times New Roman type with one-inch margins, as required by Local Rule 5.1.

/s/ Timothy S. Judge
TIMOTHY S. JUDGE
Assistant U.S. Attorney

Date: July 31, 2026

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

NATIONAL FAMILY PLANNING
& REPRODUCTIVE HEALTH
ASSOCIATION, et al.

Plaintiffs,

v.

ROBERT F. KENNEDY, JR., et al.

Defendants.

No. 1:26-cv-1684-JPW

(Hon. Jennifer P. Wilson)

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that he is an employee in the Office of the United States Attorney for the Middle District of Pennsylvania and is a person of such age and discretion as to be competent to serve papers.

That on July 31, 2026, he served a copy of the attached

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT FOR LACK OF JURISDICTION**

via the Court's CM/ECF system, which will automatically generate notice upon all counsel of record.

*/s/ Timothy S. Judge*
TIMOTHY S. JUDGE
Assistant U.S. Attorney