**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| NATIONAL FAMILY PLANNING & REPRODUCTIVE HEALTH ASSOCIATION, et al.<br><br>Plaintiffs,<br><br>v.<br><br>ROBERT F. KENNEDY, JR., et al.<br><br>Defendants. | No. 1:26-cv-1684-JPW<br><br>(Hon. Jennifer P. Wilson)<br><br>**ORAL ARGUMENT REQUESTED** |

# MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

BRIAN D. MILLER
*United States Attorney*

TIMOTHY S. JUDGE
*Deputy Chief, Civil Division*

## TABLE OF CONTENTS


INTRODUCTION ..... 1
PROCEDURAL HISTORY ..... 3
FACTUAL BACKGROUND ..... 4
I. The Title X Program ..... 4
II. OASH Priorities ..... 5
III. Notice of Funding Opportunity ..... 6
STATEMENT OF QUESTIONS INVOLVED ..... 8
LEGAL STANDARD ..... 9
I. Summary Judgment – Fed. R. Civ. P. 56 ..... 9
II. Facial Challenge ..... 10
III. Preliminary Injunction – Fed. R. Civ. P. 65 ..... 10
ARGUMENT ..... 11
I. The NOFO Is Not Final Agency Action ..... 11
II. Discretionary Scoring and Priority Alignment in NOFO Are Not Judicially Reviewable, Committed to Agency Discretion ..... 16
III. Plaintiffs' APA Claims Fail on the Merits ..... 17
A. The NOFO Does Not Conflict with Title X Regulations ..... 17
B. Agency Priorities Do Not Require Notice-and-Comment Rulemaking ..... 20
C. Implementation of Priority Considerations Was Not Arbitrary and Capricious ..... 22
IV. PRELIMINARY INJUNCTION8F ..... 28
CONCLUSION ..... 29

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aerosource, Inc. v. Slater*,
142 F.3d 572 (3d Cir. 1998)........................................ 2, 12

*Atl. States Legal Found. v. EPA*,
325 F.3d 281 (D.C. Cir. 2003)........................................ 11

*Bennett v. Spear*,
520 U.S. 154 (1997)........................................ 2, 11, 12, 13

*Cal. Human Dev. v. Brock*,
762 F.2d 1044 (D.C. Cir. 1985)........................................ 16

*Chemours Co. FC, LLC v. United States Env't Prot. Agency*,
109 F.4th 179 (3d Cir. 2024)........................................ 11, 13

*Citizens Alert Regarding the Environment v. EPA*,
102 F. App'x 167 (D.C. Cir. 2004)........................................ 13, 14

*City of Los Angeles v. Barr*,
929 F.3d 1163 (9th Cir. 2019)........................................ 22

*City of Philadelphia v. Sessions*,
280 F. Supp. 3d 579 (E.D. Pa. 2017)........................................ 14

*Cmty. Action of Laramie Cnty., Inc. v. Bowen*,
866 F.2d 347 (10th Cir. 1989)........................................ 16

*Dorley v. Cardinale*,
119 F. Supp. 3d 345 (E.D. Pa. 2015)........................................ 9

*FCC v. Fox Television Stations, Inc.*,
556 U.S. 502 (2009)........................................ 25

*Freedom Network USA v. Trump*, No. 25 C,
12419, 2026 WL 800392 (N.D. Ill. Mar. 23, 2026)........................................ 15

*Guardian Life Ins. Co. of Am. v. Estate of Cerniglia*,
446 Fed App'x 453 (3d. Cir. 2011)........................................................... 28

*Heckler v. Chaney*,
470 U.S. 821 (1985)....................................................................................... 16

*Lincoln v. Vigil*,
508 U.S. 182 (1993)................................................................................. 3, 16, 17

*Logic Tech. Dev. LLC v. United States Food & Drug Admin.*,
84 F.4th 537 (3d Cir. 2023)............................................................................ 23

*Mallet & Co. v. Lacayo*,
16 F.4th 365 (3d Cir. 2021)............................................................................ 10

*Mazurek v. Armstrong*,
520 U.S. 968 (1997)....................................................................................... 10

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Ins. Co.*,
463 U.S. 29 (1983)......................................................................................... 22

*NFPRHA v. Gonzales*,
468 F.3d (D.C. Cir. 2006)..................................................................... 2, 20, 21, 29

*Ocean Cnty. Landfill Corp. v. EPA*,
631 F.3d 652 (3d Cir. 2011)............................................................................ 12

*P.C. Yonkers, Inc. v. Celebrations the Party and Seasonal Superstore, LLC*,
428 F.3d 504 (3d Cir. 2005)............................................................................ 28

*Paralyzed Veterans of America v. D.C. Arena, L.P.*,
117 F.3d 579 (D.C. Cir. 1997)........................................................................ 21

*Pennsylvania Dep't of Human Servs. v. U.S. Dep't of Health & Human Servs.*,
241 F. Supp. 3d 506 (M.D. Pa. 2017)................................................................ 9

*Planned Parenthood of Greater New York v. U.S. Department of Health & Human Services*,
No. CV 25-2453, 2025 WL 2840318 (D.D.C. Oct. 7, 2025)................................ 15

*Planned Parenthood of Wisconsin v. Azar*,
316 F. Supp. 3d 291 (D.D.C. 2018) ............................................. 2, 5, 7, 8, 13, 27

*Rattlesnake Coal. v. EPA*,
509 F.3d 1095 (9th Cir. 2007)...................................................................... 13, 14

*Raymond Proffitt Found. v. EPA*,
930 F. Supp. 1088 (E.D. Pa. 1996) ..................................................................... 9

*Reliable Automatic Sprinkler Co., Inc. v. Consumer Prod. Safety Comm'n*,
324 F.3d 726 (D.C. Cir. 2003) ......................................................................... 11

*Rhode Island Coalition Against Domestic Violence v. Bondi*,
794 F. Supp. 3d 58 (D.R.I. 2025)...................................................................... 15

*Riverkeeper Network v. Sec'y of Pa. Dep't of Env't Prot.*,
870 F.3d 171 (3d Cir. 2017)............................................................................... 12

*SBC Inc. v. FCC*,
414 F3d 486 (3d Cir. 2005)................................................................................ 21

*Soundboard Ass'n v. FTC*,
888 F.3d 1261 (D.C. Cir. 2018) ........................................................................ 11

*State ex rel. Becerra v. Sessions*,
284 F. Supp. 3d 1015 (N.D. Cal. 2018) ............................................................ 14

*State Sportsmen's Ass'n v. Del. Dep't of Safety & Homeland Sec.*,
108 F.4th 194 (3d Cir. 2024)........................................................................ 10, 29

*Steenholdt v. FAA*,
314 F.3d 633 (D.C. Cir. 2003) .......................................................................... 16

*Students for Fair Admissions, Inc. v. Harvard*,
600 U.S. 181 (2023) .......................................................................................... 18

*Sydnor v. Office of Pers. Mgmt.*,
2008 WL 1990808 (E.D. Pa. May 7, 2008) .......................................................... 9

*Transcon. Gas Pipe Line Co. v. Pa. Envtl. Hearing Bd.*,
108 F.4th 144 (3d Cir. 2024) ........ 10

*United States v. Allen*,
707 F. Supp. 3d 478 (E.D. Pa. 2023) ........ 10

*United States v. Mitchell*,
652 F.3d 387 (3d Cir. 2011) ........ 10

*United States v. Salerno*,
481 U.S. 739 (1987) ........ 10, 18

**Statutes**

5 U.S.C. § 701(a)(2) ........ 16
5 U.S.C. § 704 ........ 11
5 U.S.C. § 706(2)(A)-(B) ........ 9
42 U.S.C. § 300(a) ........ 4, 18
42 U.S.C. § 300(b) ........ 17, 19, 26, 27
42 U.S.C. § 300a-6 ........ 24

**Rules**

Fed. R. Civ. P. 56(a) ........ 9

**Regulations**

2 C.F.R. 200.204 ........ 7
49 C.F.R. Part 59, Subpart A ........ 20
42 C.F.R. Part 59, Subpart A §59.1- §59.11 ........ 20
42 C.F.R. § 59.11 ........ 5
42 C.F.R. § 59.3(a)(5) ........ 18
42 C.F.R. § 59.5(a)(4) ........ 18
42 C.F.R. § 59.7(a) ........ 14, 15, 17
42 C.F.R. § 59.7(a)(3) ........ 5, 26
42 C.F.R. §§ 59.7-.11 ........ 17

**Other Authorities**

Executive Order 14332 .......... 26
Pub. L. No. 91-572 .......... 4

## INTRODUCTION

A grant announcement is not a grant decision, and a document that promises to follow the law is not evidence that it will not. Plaintiffs, family planning service providers and organizations, including current grant recipients under Title X of the Public Health Service Act,[1] ask this Court to strike down parts of a Notice of Funding Opportunity (NOFO) before a single application has been submitted or scored. Summary judgment should be granted to Defendants for three reasons.[2]

*First*, Plaintiffs have not identified a final agency action. They attack the fiscal year 2027 Title X NOFO (the "NOFO") on its face saying that consideration of certain agency priorities conflicts with the Title X regulations. Yet the NOFO and the Agency's priorities commit to following existing law: it states three separate times that priority alignment applies only "where authorized by law" and "within the scope of the program." A.R.077, 080, 111. A facial challenge to language that already disclaims the unlawful application Plaintiffs fear cannot succeed. To the extent Plaintiffs instead object to some future application of the priorities, no

---

[1] The Plaintiffs are National Family Planning & Reproductive Health Association ("NFPRHA") and Family Health Council of Central Pennsylvania ("FHCCP") (collectively, "Plaintiffs").

[2] The Defendants are Robert F. Kennedy Jr. in his official capacity as the United States Secretary of Health and Human Services, Brian Christine in his official capacity as the Assistant Secretary for Health, and Amy Margolis in her official capacity as the Deputy Director of the Office of Population Affairs (collectively, "Defendants").

application has occurred. No funds have been awarded, no applications are yet due, and the Agency official who makes final funding decisions is not bound by the merit-review score. That is not final agency action under *Bennett v. Spear* or the Third Circuit's *Aerosource* factors, and it was not final agency action when a similarly situated plaintiff raised a nearly identical challenge to a 2018 Title X funding announcement in *Planned Parenthood of Wisconsin v. Azar*, 316 F. Supp. 3d 291 (D.D.C. 2018).

NFPRHA has been down this road before. The D.C. Circuit has already instructed this organization that when it believes a Title X policy or amendment is ambiguous, its remedy is to ask the Agency for clarification, not sue. *NFPRHA v. Gonzales*, 468 F.3d 826, 831 (D.C. Cir. 2006) ("[T]he association has chosen to remain in the lurch[.]"). Despite nearly four months between the NOFO's publication and this suit, and despite an open invitation to submit questions to the program office, Plaintiffs did not. Instead, they seek judicial intervention to resolve hypothetical conflicts they have not raised with the Agency in the ordinary course.

*Second*, even if the NOFO's incorporation of agency priorities were reviewable, the decision regarding how much weight to give those priorities in scoring discretionary grants is committed to agency discretion by law. Congress required the Agency to weigh certain statutory factors but did not dictate how those factors are weighed against one another or against evolving programmatic priorities.

That is exactly the kind of "complicated balancing" the Supreme Court has held courts cannot second-guess. *Lincoln v. Vigil*, 508 U.S. 182, 193 (1993).

*Third*, Plaintiffs fail on the merits. The NOFO does not conflict with the Title X regulations. It repeatedly subordinates every priority to the statute, the regulations, and controlling law. Neither does it require notice-and-comment rulemaking because it changes no regulation and binds no one. And, because the agency explained its reasons, tied them to evidence, and preserved previously established point allocations, its scoring criteria are not arbitrary or capricious

Last, Plaintiffs are not entitled to a preliminary injunction. There is no likelihood of success on the merits, and importantly, they cannot show irreparable harm. They do not stand to lose a grant they already have; they claim only that they might not receive a new one, in a competition that will not conclude until April 2027. That is not the kind of harm equity exists to prevent, particularly for parties who could have asked the agency to clarify any of the language they now call vague and chose not to.

For these reasons, the Court should grant summary judgment to Defendants and deny Plaintiffs' motion for a preliminary injunction.

## PROCEDURAL HISTORY

Plaintiffs filed a First Amended Complaint on July 13, 2026. Dkt. 35 ("Am. Compl."). It attaches the challenged NOFO as Exhibit A, Dkt. 35-2, the referenced

OASH priorities as Exhibit B, Dkt. 35-3 ("OASH Priorities"), and the HHS priorities as Exhibit C, Dkt. 35-4. Two days later, Plaintiffs moved for summary judgment or, alternatively, a preliminary injunction. Dkts. 39 and 40.

The Court entered a scheduling order on July 16, 2026 and another scheduling order on July 30, 2026, directing Defendants to file an administrative record by July 31, 2026. *See* Dkts. 42 and 44. On July 31, 2026, the Defendants filed the Administrative Record (the "A.R."). Dkt. 45.[3]

On July 31, 2026, the Defendants moved to dismiss the Am. Compl. on jurisdictional grounds. Dkts. 46 and 47. Oral argument on the Defendants' motion to dismiss and the Parties' cross-motions for summary judgment is scheduled for September 11, 2026. *See* Dkts. 42 and 44.

## FACTUAL BACKGROUND

### I. The Title X Program

Congress enacted Title X in 1970 to make "comprehensive voluntary family planning services readily available to all persons desiring such services." Pub. L. No. 91-572, § 2(1), 84 Stat. 1504 (1970). Funded projects must "offer a broad range of acceptable and effective family planning methods and services." 42 U.S.C. § 300(a). In awarding grants, the Secretary must take into account patient volume, local need, and "the relative need of the applicant." *Id.* § 300(b). Implementing

[3] Citation to the A.R. will be made using the Bates label pagination in Dkt. 45.

regulations supply additional criteria, including the applicant's "ability to advance health equity." 42 C.F.R. § 59.7(a)(3). The Secretary may also "impose additional conditions" on any award "necessary to assure or protect advancement of the approved program, the interests of public health, or the proper use of grant funds." 42 C.F.R. § 59.11.

## II. OASH Priorities

Throughout the history of the Title X program, applicants have been expected to incorporate program priorities, as the agency revises them, into their projects. *See Planned Parenthood of Wisconsin, Inc. v. Azar*, 316 F. Supp. 3d 291, 296 (D.D.C. 2018), vacated and remanded, 942 F.3d 512 (D.C. Cir. 2019).[4] On their own website, OASH has posted program priorities and key issues since 2017, noting "[e]ach year the OPA establishes program priorities that represent overarching goals for the Title X program." *See* Office of Population Affairs, Title X Past Program Priorities, U.S. Dep't of Health & Hum. Servs., https://opa.hhs.gov/grant-programs/archive/title-x-

[4] The decision includes a recitation of previous Title X priorities noting, "[p]rior announcements have contained similar priorities. For example, from 2003 to 2011, the announcements emphasized that funding applicants should provide access to abstinence counseling…From 2003 to 2015, the announcements focused on providing "related preventative health services" that improve "the overall health of individuals" rather than merely attending to reproductive health…The previous announcements have also urged applicants to encourage family participation in the delivery of family planning services…Finally, from 2004 to 2009, the funding announcements encouraged applicants to partner with community-based and faith-based organizations." *Id.*at 297 (internal citations omitted).

program-archive/title-x-past-program-priorities (last visited Aug. 4, 2026). Priorities in 2019 and 2020 included, "[p]roviding counseling for adolescents that encourages sexual risk avoidance by delaying the onset of sexual activity as the healthiest choice" and "[f]ostering interaction with community and faith-based organizations to develop a network for client referrals when needs outside the scope of family planning are identified." *Id.* Priorities in 2018 included, "[e]nsuring that all clients are provided services in a voluntary, client-centered and non-coercive manner in accordance with Title X regulations." *Id.* Priorities in 2017 included, "[i]dentifying individuals, families, and communities in need, but not currently receiving family planning services, through outreach to hard-to-reach and/or vulnerable populations." *Id.*

As with all previous Administrations, the current Administration has established objectives and priorities. Beginning in the fall of 2025, OASH centralized its priorities in a single published statement. A.R.134–37. As with the NOFO itself, that statement subordinates every priority to existing law: "OASH will implement the above priorities consistent with applicable laws, regulations, court orders, and any required procedures." A.R.136.

## III. Notice of Funding Opportunity

The Title X grant application process begins with a Notice of Funding Opportunity. The NOFO sets out the procedural requirements and substantive

criteria for applications and describes the process by which the applications are reviewed. *See* 2 C.F.R. 200.204. The Office of Population Affairs ("OPA") published the FY 2027 NOFO in April 2026 and a revised version on July 9, 2026. Am. Compl. ¶¶ 70–71. It solicits applications for five-year Title X projects. Applications are due January 11, 2027, and awards are anticipated on or about April 1, 2027. A.R.071

The FY 2027 NOFO states twice that all funded activities "must be in compliance with the requirements of the Title X statute, legislative mandates, and regulations." A.R.073, 078. It subordinates priority alignment to that law three separate times: alignment applies only "where consistent with program authority and the scope of the award . . . and when authorized by law," A.R.077; only "to the extent authorized by law and within the scope of the program," A.R.080; and only "where authorized by law and within the scope of the program," A.R.111.

Scoring has for years tracked changing priorities. In *Planned Parenthood of Wisconsin*, the court observed that grantees "always knew that their proposals needed to address that year's Title X program priorities" and that a prior announcement's decision to make priority alignment the highest-scored factor merely "makes explicit what has been implicit for years." 316 F. Supp. 3d at 306–07. The FY 2018 NOFO allocated 35 of 100 points to priority alignment, the same allocation at issue here. *Id.* at 297. Similar to the FY 2018 NOFO, the remaining 65

points available in the FY 2027 NOFO track traditional statutory and regulatory factors: 25 points for demonstrated local need and service capacity, 15 points for direct statutory and regulatory compliance, 20 points for project management and staffing, and 5 points for budget and non-federal resources. A.R.109–10.

Scoring is not outcome-determinative. The NOFO's "Federal Staff Review" section explains that OPA will coordinate with a senior appointee, who will consider "[a]lignment with HHS and OASH priorities, where authorized by law and within the scope of the program," among other factors, in recommending funding decisions to the Grants Management Officer. A.R.111. As in *Planned Parenthood of Wisconsin*, "the scoring criteria does not legally bind the [senior appointee's] final decision." 316 F. Supp. 3d at 302.

## STATEMENT OF QUESTIONS INVOLVED

1.) Whether publication of this Notice of Funding Opportunity constitutes final agency action that is reviewable under the Administrative Procedure Act before any funds are awarded. *No.*

2.) Whether incorporation of discretionary Agency priority considerations in grant determinations is committed to agency discretion by law. *Yes.*

3.) Whether the challenged provisions/priority alignment scoring criteria in the NOFO violate the Administrative Procedure Act. *No.*

## LEGAL STANDARD

### I. Summary Judgment – Fed. R. Civ. P. 56

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Where claims call for "judicial review under the Administrative Procedure Act ('APA')," as here, "summary judgment is the mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review." *Pennsylvania Dep't of Human Servs. v. U.S. Dep't of Health & Human Servs.*, 241 F. Supp. 3d 506, 511 (M.D. Pa. 2017) (citation omitted).

"[B]ecause the district judge sits as an appellate tribunal" regarding APA claims, the usual summary judgment standard does not apply" to such claims. *Dorley v. Cardinale*, 119 F. Supp. 3d 345, 351 (E.D. Pa. 2015). In adjudicating APA claims, a "court's review of agency action is limited to the full administrative record that was before the agency at the time it made its decision." *Raymond Proffitt Found. v. EPA*, 930 F. Supp. 1088, 1102 (E.D. Pa. 1996) (declining to consider depositions and declarations in adjudicating APA claims brought under 5 U.S.C. § 706(2)(A)-(B)); *see also Sydnor v. Office of Pers. Mgmt.*, 2008 WL 1990808, at *3 n. 8 (E.D. Pa. May 7, 2008) (holding over plaintiff's objection that "the Court must consider only the administrative record filed by" the defendant federal agency).

## II. Facial Challenge

Because Plaintiffs sued before any application was submitted, their claims are necessarily facial: they ask the Court to invalidate the NOFO priority considerations based on how they might someday be applied to some applicant, not based on any application that has occurred. Plaintiffs must therefore show that no conceivable application of the challenged language could be lawful. *See United States v. Salerno*, 481 U.S. 739, 745 (1987); *United States v. Mitchell*, 652 F.3d 387, 405 (3d Cir. 2011) (en banc); *United States v. Allen*, 707 F. Supp. 3d 478, 484 (E.D. Pa. 2023).

## III. Preliminary Injunction – Fed. R. Civ. P. 65

A preliminary injunction is "an extraordinary remedy that should be granted only in limited circumstances," and the movant bears the burden of a "clear showing." *Del. State Sportsmen's Ass'n v. Del. Dep't of Safety & Homeland Sec.*, 108 F.4th 194, 200 (3d Cir. 2024) (quoting *Mallet & Co. v. Lacayo*, 16 F.4th 365, 391 (3d Cir. 2021); *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)). The Third Circuit weighs (1) likelihood of success on the merits, (2) irreparable harm absent relief, (3) the balance of equities, and (4) the public interest. *Transcon. Gas Pipe Line Co. v. Pa. Envtl. Hearing Bd.*, 108 F.4th 144, 150 (3d Cir. 2024). The first two factors are "the most critical," and failure on either is fatal. *Id.*; *Del. State Sportsmen's Ass'n*, 108 F.4th at 202.

## ARGUMENT

### I. The NOFO Is Not Final Agency Action

Judicial review may be obtained under the APA only if the agency action is considered "final." *Atl. States Legal Found. v. EPA*, 325 F.3d 281, 284 (D.C. Cir. 2003); 5 U.S.C. § 704. The APA's definition of "final agency action" expressly carves out "preliminary, procedural, or intermediate agency action." 5 U.S.C. § 704. To be final, agency action must be definitive, with a direct and immediate effect on the day-to-day business of the challenging party. *Reliable Automatic Sprinkler Co., Inc. v. Consumer Prod. Safety Comm'n*, 324 F.3d 726, 731 (D.C. Cir. 2003); *see also Chemours Co. FC, LLC v. United States Env't Prot. Agency*, 109 F.4th 179, 185 (3d Cir. 2024).

Under *Bennett v. Spear*, agency action is final only if it "mark[s] the consummation of the agency's decision-making process" and determines "rights or obligations" or triggers "legal consequences." 520 U.S. 154, 177–78 (1997). Both Bennett prongs must be met to make agency action final. *Soundboard Ass'n v. FTC*, 888 F.3d 1261, 1267 (D.C. Cir. 2018). To assist in evaluating the *Bennett* factors, the Third Circuit has utilized a multi-factor analysis to determine whether an agency's action is final.

> An order's finality is "informed but not decided by an agency classification" and is characterized by the following five factors:

> (1) whether the decision represents the agency's definitive position on the question; (2) whether the decision has the status of law with the expectation of immediate compliance; (3) whether the decision has immediate impact on the day-to-day operations of the party seeking review; (4) whether the decision involves a pure question of law that does not require further factual development; and (5) whether immediate review would speed enforcement of the relevant act.

*Aerosource, Inc. v. Slater*, 142 F.3d 572, 579 (3d Cir. 1998).[5]

The Plaintiffs satisfy neither the *Bennett* nor the *Slater* factors. Under the first two *Slater* factors, the NOFO already states the governing rule: priorities yield to the regulations where the two conflict. A.R.077, 080, 111.[6] What has not occurred is any actual conflict for that rule to resolve; no application has been scored, so there is no basis to conclude the Agency will credit a priority like diversity or gender ideology priority alignment over regulatory compliance in practice. That same qualifying language forecloses any finding that the NOFO is unlawful on its face, since the document's own terms subordinate the priorities to the existing regulations.

The third and fourth factors fare no better for the Plaintiffs. Mere publication of the NOFO has not changed the status quo or impacted Plaintiffs' day-to-day

---

[5] *See, e.g.*, *Ocean Cnty. Landfill Corp. v. EPA*, 631 F.3d 652, 655 (3d Cir. 2011) (evaluating both *Bennett* and *Slater* factors). *But see Del. Riverkeeper Network v. Sec'y of Pa. Dep't of Env't Prot.*, 870 F.3d 171, 176–78 (3d Cir. 2017) (considering only the *Bennett* test).

[6] Plaintiffs cherry-pick the obligatory language from the NOFO and intentionally omit the qualifying limitations.

operations; only an award decision could do so. *See e.g., Chemours Co.*, 109 F.4th at 186 (finding mere publication of health advisory by EPA was not a final agency action). Nor is there a complete administrative record or a final agency decision because the priority alignment scoring criteria have not been applied to any application. *See* Dkt. 47 at 14.

Even the fifth factor does not favor Plaintiffs. Enforcement of priorities Plaintiffs challenge cannot occur until funds are awarded. Immediate review would not speed enforcement of anything because there is no unlawful conduct to enforce against unless and until the Agency departs from the published hierarchy.

The Plaintiffs also fail to satisfy the *Bennett* factors. Although Plaintiffs argue there will be no further revisions to the NOFO, grants are not final until the agency obligates funds, and the agency has not done so here. *See, e.g., Rattlesnake Coal. v. EPA*, 509 F.3d 1095, 1104 (9th Cir. 2007); *Citizens Alert Regarding the Environment v. EPA*, 102 F. App'x 167, 168 (D.C. Cir. 2004). Second, no legal consequences have been determined because there are no applications and the Agency has not awarded any funding.

This is not the first time a Title X funding announcement's incorporation of priorities has been challenged as premature. In *Planned Parenthood of Wisconsin, Inc. v. Azar*, 316 F. Supp. 3d 291, 304 (D.D.C. 2018), vacated and remanded on other grounds, 942 F.3d 512 (D.C. Cir. 2019), the court held that a Title X NOFO

was not final agency action and imposed no legal obligations, on a challenge to the Agency's incorporation of similar priorities in scoring grant applications. The court emphasized three determinative facts: "(1) no grants have yet issued under the [NOFO], (2) Title X grant applicants are not legally required to do anything in response to the announced criteria, and (3) the challenged language only governs an intermediate stage in the review process, with results that do not bind the Deputy Assistant Secretary for Population Affairs, who makes the final award decision." *Id.* at 300. The facts are the same here, demanding the same result.

Other circuits agree: grant announcements and NOFOs are not final until the agency completes review and disburses funds. *Rattlesnake Coal. v. EPA*, 509 F.3d 1095, 1104 (9th Cir. 2007); *Citizens Alert Regarding the Env't v. EPA*, 102 F. App'x 167, 168 (D.C. Cir. 2004). The narrow exception for mandatory grant programs where the agency lacks discretion, *see State ex rel. Becerra v. Sessions*, 284 F. Supp. 3d 1015, 1031–32 (N.D. Cal. 2018), does not apply here: the Agency retains full discretion over whether to fund any given applicant regardless of score. A.R.111; 42 C.F.R. § 59.7(a).

Plaintiffs' cited cases are distinguishable. In *City of Philadelphia v. Sessions*, 280 F. Supp. 3d 579, 615 (E.D. Pa. 2017), the plaintiffs adequately pled final agency action to survive a motion to dismiss. However, there, the government had publicly announced that all grant recipients *must* comply with all three challenged conditions,

and there was no qualifying language subordinating those conditions to existing law. *Id.* The government had also already applied the conditions to another city's award, although it had not yet issued an award to Philadelphia. *Id.* Here, the Agency priorities are qualified, the priority alignment scoring is not outcome determinative, and no funding has been awarded to anyone under the criteria at issue. A.R.111; *see also* 42 C.F.R. § 59.7(a).

*Planned Parenthood of Greater New York v. U.S. Department of Health & Human Services*, No. CV 25-2453, 2025 WL 2840318, at *18 (D.D.C. Oct. 7, 2025), fares no better. There, the plaintiffs had received prior program funding and were required to resubmit and recertify an application each year for continued funding, and the funds were actually dispersed before the plaintiffs sued. *Id.* at *2. The plaintiffs originally sued before the funding was awarded and then voluntarily dismissed after receiving it. *Id.* The plaintiffs then sued again to invalidate certain conditions on the awarded grants, namely compliance with certain executive orders. Here, no funds have been appropriated, no applications have been submitted, and no funding has been awarded.[7] These differences are dispositive. In sum, the NOFO is not final agency action.

[7] Plaintiffs also cite *Freedom Network USA v. Trump*, No. 25 C 12419, 2026 WL 800392, at *19 (N.D. Ill. Mar. 23, 2026), and *Rhode Island Coalition Against Domestic Violence v. Bondi*, 794 F. Supp. 3d 58, 68 (D.R.I. 2025). These out of circuit cases did not involve discretionary scoring of priorities and the *Rhode Island Coalition* case concerned strict conditions not subject to existing regulations. There,

## II. Discretionary Scoring and Priority Alignment in NOFO Are Not Judicially Reviewable, Committed to Agency Discretion

Even if the NOFO's priority language were reviewable, the APA does not permit review where "agency action is committed to agency discretion by law." 5 U.S.C. § 701(a)(2). That exception applies where a court would have no "meaningful standard against which to judge the agency's exercise of discretion." *Steenholdt v. FAA*, 314 F.3d 633, 638 (D.C. Cir. 2003) (quoting *Heckler v. Chaney*, 470 U.S. 821, 830 (1985)). It applies with particular force to funding decisions, which routinely require "a complicated balancing of a number of factors which are peculiarly within [agency] expertise." *Heckler*, 470 U.S. at 831; *see Lincoln v. Vigil*, 508 U.S. 182, 193 (1993); *see also Cmty. Action of Laramie Cnty., Inc. v. Bowen*, 866 F.2d 347, 354 (10th Cir. 1989) ("Funding determinations are notoriously unsuitable for judicial review, for they involve the inherently subjective weighing of large numbers of varied priorities which combine to dictate the wisest dissemination of an agency's limited budget."); *Cal. Human Dev. v. Brock*, 762 F.2d 1044, 1052 (D.C. Cir. 1985) (Scalia, J., concurring) (quoting *Heckler*, 470 U.S. at 823) ("[T]he allocation of grant funds among various eligible recipients, none of which has any statutory entitlement to them, is traditionally a matter 'committed to agency discretion by law'").

---

the applicants were essentially disqualified if they did not comply with all conditions, here priority alignment is a factor that is scored and is not outcome determinative.

Here, the statute and the regulations supply law as to which factors the Agency must consider. 42 U.S.C. § 300(b); 42 C.F.R. §§ 59.7-.11. Neither list is exhaustive, and neither dictates *how much weight* any factor receives relative to the others. Congress did not circumscribe the Agency's discretion to award grants "in what it sees as the most effective or desirable way" to achieve the statute's goals. *Lincoln*, 508 U.S. at 192. The regulations confirm as much. The Secretary "may award grants for the establishment and operation of those projects which will in the *Department's judgment* best promote the purposes of [the Title X statute]." 42 C.F.R. § 59.7(a) (emphasis added). Because no statute or regulation assigns weight to any factor, and the regulations expressly commit that judgment to the Secretary, there is no law for a court to apply in second-guessing how the Agency has weighed the factors here.

## III. Plaintiffs' APA Claims Fail on the Merits

### A. The NOFO Does Not Conflict with Title X Regulations

Plaintiffs' regulatory-conflict theory fails for three independent reasons. *First*, both the NOFO and the OASH priorities statement expressly subordinate every priority to existing law. The NOFO requires alignment "when authorized by law according to the Title X statute, regulations, legislative mandates, and additional program guidance." A.R.077. The OASH priorities close with the same instruction: implementation must be "consistent with applicable laws, regulations, court orders, and any required procedures." A.R.136. Where the agency has already resolved a

claimed conflict by making the priority subordinate to the law, there is no conflict to judicially resolve.

*Second*, to prevail on their facial challenge, the Plaintiffs must show that no conceivable application of the challenged language could be lawful. *See United States v. Salerno*, 481 U.S. 739, 745 (1987). They have not and cannot. The "Enforcing the Hyde Amendment" priority, for example, simply reinforces existing appropriations law and Title X regulations. 42 C.F.R. § 59.3(a)(5) (grantees must not provide abortion as a method of family planning and provide 'non-directive counseling' as to available options).

The priority addressing diversity warrants particular attention, because it is where Plaintiffs' theory is weakest. Title X's non-discrimination regulation bars grantees from discriminating based on race. 42 C.F.R. § 59.5(a)(4). The Agency's priority prohibits preferential treatment based on race. A.R.134. Prohibition on racial preferences does not equate to exclusion of various races, as Plaintiffs suggest.[8] The gender-related priority is likewise consistent with the statute, which authorizes funding only for "family planning" services. 42 U.S.C. § 300(a). Interventions like sex-rejecting procedures fall outside that scope regardless of any priority statement. Plaintiffs' claim therefore fails on the merits if read as a facial challenge (and it is

[8] This is especially true given the constitutional principle reaffirmed in *Students for Fair Admissions, Inc. v. Harvard*, 600 U.S. 181 (2023) (finding allocating benefits based on race raises serious legal concerns).

not ripe if read as an as-applied challenge). Either way, judgment for Defendants follows.

*Third*, Plaintiffs assert that the agency should have been clearer in stating how projects must align program design and activities with agency priorities "when authorized by law according to the Title X statute, regulations, legislative mandates, and additional program guidance." A.R.077. Reading the NOFO's plain language, it is hard to see how the agency could have been clearer. The NOFO explains how applicants might integrate Agency priorities into their projects under "Expectations for Recipients. [subsection] A.4.i --Address OPA Program Priorities." A.R.080–084. This section of the NOFO outlines a number of Title X specific interventions grantees might make to promote Agency priorities such as reducing over-medicalization, addressing chronic disease, and promoting body and health literacy. *Id.* The Agency accordingly awards points to recipients who address these priorities. A.R.110. ("The extent to which the applicant proposes strategies that meaningfully advance OPA's program priorities as discussed in Section C(a)(4)(i), 'Address OPA Program Priorities' and HHS priorities."). A single document cannot account for every hypothetical use of the funds that may promote the Agency's priorities.

Plaintiffs, moreover, cannot fault the NOFO's clarity when they never sought clarification from the Agency, which they are permitted to do. *See* A.R.121 (providing contact information for applicants with questions). The D.C. Circuit

rejected the same "sue first, ask questions later" strategy from this same plaintiff two decades ago: "Here the association has within its grasp an easy means for alleviating the alleged uncertainty. It could inquire of HHS exactly how the agency proposes to resolve any of the conflicts that it claims to spot between the amendment and the regulation." *NFPRHA v. Gonzales*, 468 F.3d 826, 831 (D.C. Cir. 2006). Despite that instruction, and despite months to do so, the Plaintiffs again did not ask. This Court should reject the strategy as the D.C. Circuit did.

### B. Agency Priorities Do Not Require Notice-and-Comment Rulemaking

Plaintiffs claim that the NOFO changes or repeals portions of the 2021 rules without going through the required notice-and-comment rulemaking. Am. Compl. ¶¶ 113-115; 153-154; Dkt. 40 at 13-18. Not so. The NOFO repeatedly affirms the existing Title X regulations. *See, e.g.*, A.R.091 ("Your plan should include a description of how you will ensure compliance with the statute, with each provision of the regulation (42 C.F.R. Part 59, Subpart A §59.1- §59.11")); A.R.078 ("All activities funded under this announcement must be in compliance with the requirements of the Title X statutes, legislative mandates, and applicable regulations."); A.R.110 (providing a score based on whether applicant provides for the requirements set forth in the Title X statute, regulations (49 C.F.R. Part 59, Subpart A), and legislative mandates). The NOFO even summarizes and hyperlinks the 2021 regulations. A.R.079 (directing applicants to:

https://www.govinfo.gov/content/pkg/FR-2021-10-07/pdf/2021-21542.pdf). A document that reaffirms a regulation cannot be read to repeal or amend it.

As with all previous Administrations, the current Administration has established objectives and priorities. To better highlight and centralize these priorities, HHS subcomponents such as OASH issued "Priorities" statements beginning in the Fall of 2025. https://health.gov/priorities. These Priorities were also incorporated into funding announcements going forward across OASH programs. While the Agency and its operating divisions have centralized Administration priorities, it has not commanded programs to advance goals outside of their statutory mandates. A.R.136 ("OASH will implement the above priorities consistent with applicable laws, regulations, court orders, and any required procedures."). The Agency has not attempted a "backdoor" rulemaking. Dkt. 40 at 3. Plaintiffs instead attempt to manufacture a regulatory conflict where none exists. "Litigants are not entitled to an adjudication of every question they perceive after reading through the text of legislation [or funding announcements]." *NFPRHA v. Gonzales*, 468 F.3d 826, 830 (D.C. Cir 2006) (citation and ellipsis omitted).

Plaintiffs are also incorrect that an agency's change in interpretation of its regulations requires notice-and-comment rulemaking. Dkt. 40 at 17. Plaintiffs cite *SBC Inc. v. FCC*, 414 F3d 486, 498 (3d Cir. 2005), which relies on *Paralyzed Veterans of America v. D.C. Arena, L.P.*, 117 F.3d 579 (D.C. Cir. 1997). The

Supreme Court overruled this line of cases in *Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92 (2015). Courts cannot graft extra-judicial procedures onto the APA, such as requiring notice-and-comment in changing an interpretative rule. *Id.* at 95. As explained, the NOFO is not a legislative rule, and even if it purported to change a regulatory interpretation, rulemaking would not be required.

### C. Implementation of Priority Considerations Was Not Arbitrary and Capricious

The Plaintiffs also argue that the NOFO is arbitrary and capricious. That standard is "very deferential," under which an agency's action must be upheld unless the agency "relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Ins. Co.*, 463 U.S. 29, 43 (1983). It requires only a "rational connection between the facts found and the choice made." *Id.*

Plaintiffs cannot clear this bar. The record shows the Agency articulated reasons for its priorities, expressly subordinated those priorities to preexisting legal requirements, allocated merit-review points in a manner consistent with its broad statutory discretion and historical norms, and refined its own NOFO between April and July 2026 through active, reasoned deliberation and refinement. *See, e.g., City*

*of Los Angeles v. Barr*, 929 F.3d 1163, 1183 (9th Cir. 2019) (finding that an agency's use of two scoring factors was not arbitrary and capricious because the factors had a "rational connection" to agency goals).

"[A]rbitrary and capricious review is not meant to be an exacting standard… a court is not to substitute its judgment for that of the agency." *Logic Tech. Dev. LLC v. United States Food & Drug Admin.*, 84 F.4th 537, 549 (3d Cir. 2023) (internal quotations and citations omitted). Courts "uphold agency action even if its reasoning is of less than ideal clarity as long as the agency's path may reasonably be discerned." *Id.* For the reasons below, the Agency's actions here should be upheld.

**i. Each Challenged Priority Is Accompanied by an Articulated, Evidence-Based Rationale**

Plaintiffs' central premise is that the Agency Priorities appear in the NOFO without explanation. That is incorrect. The NOFO expressly incorporates and cross-references the OASH and HHS priorities statements, A.R.077, and those statements supply detailed justifications for every priority Plaintiffs challenge.

For the priority reducing "overmedicalization," the NOFO cites contemporaneous CDC data on declining contraceptive use and NCHS survey data on reasons for discontinuation. A.R.081 & nn.1–2. The OASH Priorities document further explains that this priority reflects OASH's judgment that "pervasive overreliance on pharmaceutical and surgical interventions . . . have failed to sufficiently address the chronic disease epidemic." A.R.135. Whether Plaintiffs

would draw the same inferences from that data is irrelevant under the deferential standard courts apply to an agency's interpretation of technical and scientific evidence within its expertise. The NOFO's account of the data is grounded in studies contained in the record. A.R.081 nn.1–2.

The gender ideology priority is similarly explained. The HHS Priorities document states that HHS conducted "a comprehensive review of the evidence and best practices for promoting the health of children and adolescents with gender dysphoria," which "found medical interventions, such as puberty blockers, cross-sex hormones, and surgeries, that seek to reject a minor's sex are unsupported by the evidence and have an unfavorable risk/benefit profile." A.R.144. This reasoned articulation ties to a stated evidentiary review, not an unexplained pronouncement.

So too with the diversity priority. The OASH Priorities document explains the Agency's view that "ideologically-laden concepts like health equity . . . ha[ve] not translated into measurable improved health for minority populations," and states that OASH will instead prioritize "solution-oriented approaches." A.R.134.

The Hyde Amendment priority is explained by reference to the statutory prohibition on the use of federal funds for abortion, 42 U.S.C. § 300a-6, together with the Agency's stated commitment to "safeguard[ing] life-affirming, lawful, and ethical program delivery" consistent with the conscience-protection statutes the NOFO reproduces in full. A.R.129–133 (Weldon Amendment protections);

A.R.096–097 (chronic disease/overmedicalization priority explanation). These are reasoned explanations, not silence.

**ii. Express Subordination to Existing Law Forecloses a Finding of Unreasoned Conflict**

An agency does not act arbitrarily when it expressly resolves the very tension a plaintiff identifies. As discussed above, the NOFO does exactly that, conditioning every priority on compliance with "program authority," "the scope of the award," and applicable law. A.R.077, 073, 078, 137. That built-in mechanism is the opposite of "entirely fail[ing] to consider an important aspect of the problem." *State Farm*, 463 U.S. at 43.

**iii. The Agency's Emphasis on Certain Priorities Is Not a Shift or a Silent Reversal in Position**

To the extent Plaintiffs invoke *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502 (2009), that standard is satisfied here as well. *First*, *Fox* requires that an agency not "disregard rules that are still on the books." *Id.* at 516. Here, the Agency has not reversed its regulatory position but adopted discretionary priorities for evaluating applications, layered atop unchanged regulations. There is no *Fox* problem where the underlying legal standard has not changed and grantees remain bound to the pre-existing framework.

*Second*, even if the additional considerations amounted to a change in prior policy, the NOFO does not pretend the prior guidance does not exist. It identifies the

specific data (A.R.081 nn.1–2), the specific evidence review (A.R.144), and the specific statutory and executive-order authority (A.R.160–161, discussing Executive Order 14332, Improving Oversight of Federal Grantmaking) that underlie the priorities. That is a transparent, documented shift in emphasis, not a "depart[ure] from a prior policy *sub silentio*." *Fox*, 556 U.S. at 515.

The NOFO's own drafting history confirms genuine deliberation. The original April 2026 draft listed thirteen priorities, including explicit "End DEI" and immigration-related line items alongside Title X-specific priorities. A.R.009–010. The July 2026 revisions streamlined that language to the program's own objectives: body literacy, reproductive goals counseling, and the QI/QA Plan. A.R.077; A.R.079–084. That revision is affirmative evidence of reconsideration, not caprice.

**iv. The Point Allocation Is a Reasonable Exercise of Discretion**

Plaintiffs' theory rests heavily on the fact that 35 of 100 merit-review points are tied to alignment with program priorities. A.R.109–110. But Congress vested the Secretary with broad discretion to weigh multiple statutory factors, including the "relative need of the applicant," without ranking them by percentage. 42 U.S.C. § 300(b). The regulations likewise list the "ability of the applicant to advance health equity" as one of several criteria HHS may weigh, 42 C.F.R. § 59.7(a)(3), without dictating the comparative weight assigned to it or to any other factor. Nothing in statute or regulations forecloses allocating merit-review points as it has done here

and in the past. *See Planned Parenthood of Wisconsin*, *Inc. v. Azar*, 316 F. Supp. 3d at 304 (discussing prior NOFO scoring Agency priorities).

And the allocation, viewed in full, is balanced rather than skewed. Of the 100 available points, 25 are tied to demonstrated local need and service capacity, 15 to direct statutory and regulatory compliance, 20 to project management and staffing capability, and 5 to budget and non-federal resource commitments. A total of 65 points are keyed to traditional programmatic and compliance factors outlined in the statute. *See* 42 U.S.C. § 300(b); A.R.109–110. The 35 points tied to priority alignment operate alongside those considerations, not in place of them. An applicant that best satisfies the core statutory criteria while reasonably addressing the priorities is well positioned to succeed. Weighing multiple statutorily authorized considerations against one another, in proportions the Agency is best positioned to judge is the "product of agency expertise" that *State Farm* instructs courts to respect. 463 U.S. at 43.

**v. The NOFO Provides Fair, Bounded Notice**

Plaintiffs' related contentions that they lack guidance on how to align with the priorities and that the priorities might sweep in unrelated HHS-wide goals both fail on the text. For each priority the NOFO identifies concrete, illustrative "[k]ey strategies." A.R.081-84. And the merit-review criterion is tied specifically to the enumerated, Title X–specific priorities in the Program Description, A.R.079–084,

not to every HHS-wide priority referenced anywhere in the document. A.R.077 (limiting consideration to priorities "within the scope of the program").

## IV. PRELIMINARY INJUNCTION[9]

No grounds exist for Plaintiffs' motion for a preliminary injunction. Plaintiffs must satisfy all four preliminary-injunction factors and they satisfy none. *P.C. Yonkers, Inc. v. Celebrations the Party and Seasonal Superstore, LLC*, 428 F.3d 504, 508 (3d Cir. 2005). As demonstrated above, Plaintiffs are not likely to succeed on the merits. They fail the remaining factors as well.

Plaintiffs' claimed injury is not that they stand to lose a grant they have. It is that they might not get a new one, in a competition that will not conclude until April 2027. That is weak harm—not the kind of certain, imminent injury a preliminary injunction exists to prevent. Money damages and failure to obtain a grant do not constitute irreparable harm. *Guardian Life Ins. Co. of Am. v. Estate of Cerniglia*, 446 Fed App'x 453, 456 (3d. Cir. 2011). *See A & B Wiper Supply v. Consumer Prod. Safety Comm.*, 514 F. Supp.1145, 1148 (E.D. Pa. 1981).

Any injury is further undercut by Plaintiffs' own delay. In the nearly four months since the NOFO was posted, Plaintiffs never asked the Agency a single clarifying question, despite an open invitation to do so. *See* A.R.121 ("For

[9] If the Court intends to grant Defendants' motion to dismiss or rule on the Parties' cross-motions for summary judgment imminently then the Court need not grant any preliminary relief.

Information on program requirements, please contact the program office representative listed below:"). As the D.C. Circuit told this same plaintiff, "the association has chosen to remain in the lurch." *NFPRHA v. Gonzales*, 468 F.3d at 831 (emphasis in original). Plaintiffs have not heeded that warning. A four-month delay before seeking emergency relief itself shows the absence of urgency and irreparable harm. *Del. State Sportsmen's Ass'n*, 108 F.4th at 206 (delay of four months reduced need for "drastic" remedy of preliminary injunction.).

The public interest and the equities favor Defendants as well. "[C]ourts rightly hesitate to interfere with exercises of executive or legislative authority." *Del. State Sportsmen's Ass'n*, 108 F.4th at 205. Congress entrusted the Agency, not the courts, to award nearly $300 million in Title X grants using decades of programmatic expertise. A preliminary injunction would interfere with that process and would inflict uncertainty, confusion, and delay upon the many other applicants preparing Title X applications under the current NOFO.

## CONCLUSION

For the foregoing reasons, the Court should grant the Defendants' motion for summary judgment and deny Plaintiffs' motion for a preliminary injunction because: (1) the NOFO does not constitute final agency action; (2) discretionary scoring and Priority alignment are committed to agency discretion and not judicially reviewable; (3) there is no conflict between the NOFO's inclusion of Agency Priorities and the

Title X regulations; (4) the Agency Priorities do not require notice-and-comment rulemaking; and (5) the NOFO's consideration of Agency Priorities is neither arbitrary nor capricious on the record.

August 6, 2026

Respectfully submitted,

BRIAN D. MILLER

United States Attorney

/s/Timothy S. Judge
TIMOTHY S. JUDGE
Deputy Chief, Civil Division
PA Bar No. 203821
William J. Nealon Federal Building
U.S. Courthouse
235 N. Washington Avenue
Scranton, PA 18507
Tel: (570) 348-2827
timothy.s.judge@usdoj.gov

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on August 6, 2026, I caused the foregoing Memorandum in Support of Defendants' Motion for Summary Judgment and Opposition to Plaintiffs' Motion for Summary Judgment, together with this Certificate of Compliance and Certificate of Service, to be filed electronically with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record, each of whom is a registered CM/ECF participant. Service on any party who is not a registered CM/ECF participant has been made by first-class mail, postage prepaid, addressed to that party's last known address.

August 6, 2026

*/s/ Timothy S. Judge*
TIMOTHY S. JUDGE
Deputy Chief, Civil Division