**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| NATIONAL FAMILY PLANNING & REPRODUCTIVE HEALTH ASSOCIATION, *et al.*, | |
| Plaintiffs, | No. 1:26-cv-1684-JPW |
| v. | (Hon. Jennifer P. Wilson) |
| ROBERT F. KENNEDY, JR., *et al.*, | |
| Defendants. | |

**PLAINTIFFS' RESPONSE TO DEFENDANTS' SUPPLEMENTAL BRIEF ADDRESSING *RENO v. CATHOLIC SOCIAL SERVICES, INC.*, 509 U.S. 43 (1993)**

The Supreme Court's decision in *Reno v. Catholic Social Services, Inc.*, 509 U.S. 43 (1993) supports Plaintiffs, not Defendants. Defendants contend that *Reno* sets forth a blanket rule: that challenges to unlawful conditions governing access to discretionary benefits never ripen until those conditions are actually applied to the plaintiff. But *Reno* stands for no such thing. Rather, *Reno*, and the cases it cites, confirm the ripeness of Plaintiffs' claims by reinforcing that where, as here, the challenged harm giving rise to a lawsuit is a *competitive disadvantage* in the process for obtaining a benefit—rather than the denial of or *inability to obtain the benefit itself*—the suit is ripe for review regardless as to whether any specific "application" has occurred.

In *Reno*, plaintiffs challenged two of four requirements found in regulations that governed whether immigrants could obtain a status adjustment pursuant to a federal statute. *Id.* at 45–52. As the Court explained, the plaintiffs' alleged "injury in fact" was their inability to obtain "the adjustments of status themselves" based on the two requirements. *Id.* at 58 n.19. Given this alleged harm, the Court held that the claims were not ripe because it was unclear from the record whether the two challenged requirements were the "but for" cause of the plaintiffs' harm—the inability to obtain a status adjustment. *Id*. The Court explained that this was because anyone desiring adjustment of status had to "take further *affirmative steps*, and [] satisfy criteria *beyond* those addressed by the disputed regulations," and the agency

had to determine whether each applicant satisfied "*all* of the [statute]'s conditions," not just those interpreted by the regulations challenged in the case. *Id.* at 58–59 (emphasis added). Because, in this context, the harm, *i.e.*, the inability to obtain the status adjustment, could be attributable to factors *beyond* the challenged requirements—specifically, the plaintiffs' failure to apply for independent reasons, or failure to satisfy requirements *other* than the challenged conditions, *id.* at 58 n.19—the Court found it appropriate to defer review until it could be determined that the challenged factors were the "but for" cause of the harm, *id.* The Court also concluded that deferring review would not impose hardship, because applicants that had applications denied could challenge those denials through a statutory review scheme, which the plaintiffs never argued was "inadequate." *Id.* at 60–61.[1]

Unlike the *Reno* plaintiffs, Plaintiffs here do not allege harm on the basis that the challenged requirements preclude them from obtaining grants, nor do they allege that "but for" the challenged requirements, they would obtain that benefit. Rather, Plaintiffs' harm is the *competitive disadvantage* they face now because of the

[1] By contrast, the Court held that an individual class member *would* have a ripe claim if his application was "front-desked" or rejected by an INS employee before it could even be filed, on the basis that he was "ineligible" for failure to satisfy the challenged requirements. *Id.* at 61–62. In these circumstances, the challenge would be ripe because it would be clear that the plaintiff's failure to satisfy the challenged requirements was the *but for* cause of his concrete harm, *id.* at 62–63, and because deferring judgment *would* result in hardship, as the plaintiff would have no way to contest the denial since the "front-desking" of his application would put him "outside the scope" of the review scheme, *id.* at 61, 63.

unlawful aspects of the NOFO—a harm that (unlike in *Reno*) *cannot* be appealed from or remedied after it has accrued. *See, e.g.*, Am. Compl., Doc. 35, ¶¶ 5–6 ("The unlawful aspects of the NOFO will cause serious harm" by "stack[ing] the deck against highly qualified applicants that would otherwise be highly competitive"); *CPG Int'l LLC v. Georgelis*, No. 3:15cv176, 2015 WL 1786287, at *11 (M.D. Pa. Apr. 20, 2015) (harm of being placed at a competitive disadvantage is irreparable because there is "no way of proving that any particular loss [] was attributable to []unfair competition"); A.R. 112 (award decisions are final and unappealable).

As the *Reno* Court made clear, this is a distinction that matters when it comes to ripeness. Indeed, in footnote 19, the Court took pains to distinguish its ripeness holding there from its decision in a different case—*Ne. Fla. Chapter Associated Gen. Contractors of Am. v. Jacksonville*, 508 U.S. 656 (1993)—where it found the plaintiff's claims reviewable. The salient distinction, as the *Reno* Court explained, was that the plaintiff in *Ne. Fla. Chapter* was not alleging that the restrictions it challenged denied its members a benefit, and seeking relief that would afford them that benefit, in which case (as in *Reno*), it becomes important to defer review "to know whether they would be eligible for [the benefit] *but for* the challenged regulations." *Reno*, 509 U.S. at 58 n.19. Instead, the *Ne. Fla. Chapter* plaintiff alleged that its members, who, like Plaintiffs here, had a documented history of bidding for and obtaining a government benefit, and undisputedly desired to do so

again, were harmed because the challenged restrictions deprived them of "an equal opportunity to compete" for the benefit. *Id*. Because their injury was "'the inability to compete on an equal footing in the bidding process, not the loss of a contract,'" the question of whether the plaintiff's members "would have been awarded contracts but for the challenged ordinance was not immediately relevant," and thus there was no need to defer review until after the restrictions had actually been applied. *Id.* (quoting *Ne. Fla. Chapter*, 508 U.S. at 666). The same is true here: It is undisputed that Plaintiffs' members have historically applied for and received Title X grants and intend to apply again now, *see, e.g.*, Doc. 40-5 ¶¶ 5, 8, and the harm is *not* the denial of grant funding, but the competitive disadvantage that Plaintiffs' members face if they do not demonstrate alignment with unlawful and vague priorities, *see supra*. *See also* Doc. 40 at 37–38; Doc. 60 at 20.

*Hennepin County v. HHS*, 2026 WL 2426300 (D.D.C. Aug. 19, 2026), cited by Defendants, similarly supports Plaintiffs, and does not stand for the proposition that unlawful conditions on benefits can only be challenged where they result in the termination of a benefit, or operate as "concrete gates" that "categorically disqualify" applicants. Doc. 68 at 3–4. While the *Hennepin County* plaintiffs challenged *both* grant terminations *and* NOFO requirements, the court made sure to "delineat[e]" between the two in its analysis, 2026 WL 2426300 at *8, and concluded that the NOFO's requirements (specifically, and independent of the terminations)

were both reviewable under the APA, *id.* at 17–18, and arbitrary and capricious, *id.* at 20–24. Nor does the *Hennepin* court's characterization of the challenged requirements as eligibility criteria distinguish that case—the plaintiffs there challenged *both* specific mandates as to what must be included in awardees' programming *and* near-identical "alignment" directives to those challenged here,[2] *id.* at 4–5, and nowhere did the court indicate that its holding would have differed had they only challenged the latter, or that a harm of competitive disadvantage, as opposed to ineligibility, would have altered the calculus, *see generally*, *id*. To the contrary, in its standing analysis, the court recognized—in accord with *Reno*—that "an inability to compete on equal footing in a competitive grant application process" is its own "injury in fact," and that where *that* is the harm alleged, "the inability to actually secure a grant but-for some enumerated disadvantage" is irrelevant. *Id.* at 10; *Reno*, 509 U.S. 58 n.19. That is the case here: in no uncertain terms, the NOFO instructs applicants that if they wish to be competitive for funds, they must show that they align with the priorities, and makes clear that, if they refuse, they will be put at a competitive disadvantage. *See, e.g.*, A.R. 110–111.

Accordingly, Plaintiffs' claims are ripe, and reviewable under the APA.

---

[2] *Id*. at 4 (describing challenged requirement to "align" with agency priorities eschewing, *inter alia*, diversity equity and inclusion and "gender ideology"). Notably, the fact that the alignment requirement there was accompanied by "when authorized by law" and "to the extent permitted by law" language, *id*., neither precluded judicial review, nor resolved the fair notice issue, *id.* at 21–22.

September 8, 2026

Respectfully submitted,

*/s/ Meagan Burrows*

Meagan Burrows*
NY Bar # 5341094
Brigitte Amiri*
NY Bar # 3017167
Ryan Mendias*
NY Bar # 5742242
Chelsea Tejada*
NY Bar # 5845300
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004
T: (212) 549-2500
mburrows@aclu.org
bamiri@aclu.org
rmendias@aclu.org
ctejada@aclu.org

Sara J. Rose
Pa. Bar # 204936
Witold J. Walczak
Pa. Bar # 62976
American Civil Liberties Union of Pennsylvania
P.O. Box 23058
Pittsburgh, PA 15222
Tel: (412) 681-7736
srose@aclupa.org
vwalczak@aclupa.org

*Attorneys for Plaintiffs*

Robin Summers*
D.C. Bar No. 219473

National Family Planning & Reproductive
Health Association
1025 Vermont Ave. NW, Suite 800
Washington, D.C. 20005
T: (202) 293-3114
rsummers@nfprha.org

*Attorney for Plaintiff NFPRHA*

**Special admission approved*

**CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing brief complies with the Court's September 1, 2026 Order (Dkt. 62).

*/s/ Meagan Burrows*
Meagan Burrows

**CERTIFICATE OF SERVICE**

I hereby certify that on September 8, 2026, I filed the foregoing electronically through the CM/ECF system, which caused all counsel of record to be served by electronic means.

*/s/ Meagan Burrows*
Meagan Burrows